UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-180-RJL |
| v. : | |
| : | |
| ELIAS COSTIANES, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNT ONE

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby submits this opposition to the defendant's motion to dismiss Count One. (Dkt. 32.) The defendant claims (at 2) that even though he—and hundreds of others—entered the Capitol on January 6, 2021, and brought Congress's certification of the Electoral College ballots to a screeching halt, he cannot be prosecuted for obstructing an "official proceeding" because the obstruction statute at issue only applies to "*administration of justice* before a tribunal and not any and all governmental functions such as legislative action by Congress." (Emphasis in original.) This contention is misguided. The motion should be denied.

BACKGROUND

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots. The defendant was aware of this proceeding, and he wanted to stop it. He traveled to Washington, D.C., from his home in Maryland and stayed overnight at a hotel downtown near the National Mall.

On the afternoon of January 6, the defendant went to the Capitol to participate in the riot and to obstruct Congress from meeting to certify the vote. While at the Capitol, the defendant

climbed scaffolding outside of the building and shouted in support of the rioting crowd. He then ascended the stairs of the Capitol while shouting "Mitch McConnell's a traitor" and "Let's go." Once inside the Capitol, the defendant filmed himself taking the "Senators Only" elevator to the second level of the chamber overlooking the Senate floor. The defendant entered the Senate chamber where numerous other rioters were rifling through the desks of Senators on the chamber floor. The defendant left the Senate chamber and, again, used the "Senators Only" elevator. He then chanted in support of a mob who overran police who were attempting to keep a door sealed. The defendant left the Capitol sometime thereafter.

The defendant was arrested on February 12, 2021. In a post-arrest statement to law enforcement, the defendant admitted that he was part of the Capitol breach on January 6, 2021. On March 3, 2021, a grand jury returned an Indictment charging the defendant with six counts. (Dkt. 7.) Count One charges the defendant with Obstruction of Congress and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2. That count is charged as follows:

> On or about January 6, 2021, in the District of Columbia, ELIAS COSTIANES attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct.

(Dkt. 7 at 1-2.)

## APPLICABLE LEGAL PRINCIPLES

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *Id.* Although a court's supervisory powers provide the authority to dismiss an

indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## ARGUMENT

The defendant's motion focuses on the definition of "official proceeding," claiming that Congress's constitutionally mandated process of counting the electoral college votes of the presidential election and certifying the next President and Vice President of the United States was somehow not an "official proceeding." This claim is without merit.

I. The Joint Session was an "Official Proceeding"

The defendant here is charged with violating 18 U.S.C. § 1512(c)(2) by corruptly obstructing, influencing, or impeding an official proceeding. An "official proceeding" for purposes of that section is defined in 18 U.S.C. § 1515 as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in


> the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1) (emphasis added).

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

Contrary to the defendant's claim, Congress's Joint Session on January 6, 2021, to review, count, and certify the Electoral College constitutes an "official proceeding" under the definition in 18 U.S.C. § 1515(a)(1). Congress's meeting to certify the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress" under Section

1515(a)(1)(B), and therefore an "official proceeding" for purposes of Section 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text.

To be sure, the Joint Session constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a "proceeding" refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendant does not meaningfully contend that the Joint Session, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition.

A narrower definition of the term "proceeding" would look to the "legal—rather than the lay—understanding" of the term. *Ermoian*, 752 F.3d at 1170. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "Proceeding" (11th ed. 2019). Taken with its modifier "official," the term "proceeding" thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170. Even under this narrower definition, Congress's Joint Session to certify the Electoral College vote—business conducted by an official body, in a formal session—would easily qualify.

The formality involved in the certification of the Electoral College vote places it well within the category of an official proceeding, even under the narrower legal definition of the term "proceeding." Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for Congress's certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 pm on the January 6 following a presidential election, Congress's meeting to certify the Electoral College

5

Case 1:21-cr-00180-RJL   Document 36   Filed 11/19/21   Page 6 of 9

vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, "Proceeding." The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). Congress's certification of the Electoral College vote, moreover, must terminate with a decision: Congress may not recess until "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress" under Section 1515(a)(1)(B).

> II.  The Term "Official Proceeding" is Not Limited
> <u>to the Administration of Justice and Tribunal Matters</u>

The defendant's core argument for dismissal (at 2) is that the obstruction statute is limited to those proceedings "related to the *administration of justice* before a tribunal." (Emphasis in original.) But the language of Section 1515(a)(1)(B) is clear, and the defendant's only cited authority—a case addressing whether an FBI investigation was an official proceeding—hardly provides support.

Section 1515(a)(1)(B) defines an "official proceeding" broadly as a "proceeding before the Congress." As an initial matter, it is difficult to imagine a proceeding more "official" than a

6

constitutionally and statutorily prescribed Joint Session of the United States Congress that convenes once every four years.

Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to Section 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. And to the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (internal quotation omitted), Congress's certification of the Electoral College vote involves a "formal convocation" of Congress to assess the ballots and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

The defendant's reliance (at 2) on *Ermonian*, 752 F.3d 1165, is wholly misplaced. In *Ermoian*, the question was whether an FBI investigation was an "official proceeding" that was "authorized by law" under subsection (a)(1)(C). *Id.* at 1170. That case had nothing to do with subsection (a)(1)(B) which is at issue here. Indeed, no court appears to have had occasion to interpret Section 1515(a)(1)(B)'s phrase "proceeding before the Congress," possibly because the phrase is unambiguous.[1]

---

[1] It is worth noting that the defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be related to the "administration of justice." (Motion at 2.) Far from a ministerial function, Congress's meeting to certify the Electoral College vote has features that resemble an adjudicative proceeding. It involves the convening of a Joint Session, a deliberative body over which a government officer, the President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election. As in an adjudicative setting, parties may lodge objections, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. *Id.* And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result." 3 U.S.C. § 16.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss count one of the Indictment should be denied.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney

By: _____
      JOHN W. BORCHERT (D.C. Bar No. 472824)
      Assistant United States Attorney
      Fraud Section
      555 Fourth Street NW
      Washington, D.C. 20530
      (202) 252-7679
      John.Borchert@usdoj.gov

November 19, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November 2021, I served a copy of the foregoing on counsel for the defendant via the Court's ECF system.

                                                  _____
                                                  JOHN W. BORCHERT
                                                  Assistant United States Attorney