UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Cr # 1:21-cr-00180 RJL-1 |
| v. : | |
| : | |
| ELIAS COSTIANES, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO SUPPRESS STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Opposition to Defendant's Amended Motion to Suppress Statements. This motion should be denied because the statements at issue were not elicited during custodial interrogation. Moreover, those statements were voluntary. In support of its opposition, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter.

### BACKGROUND

On February 15, 2021, the Honorable Thomas M. DiGirolamo, Magistrate Judge in the District of Maryland, issued a search warrant for a legal blood draw for a blood sample from Defendant Elias Costianes. The warrant resulted from the finding of suspected illegal controlled substances located in Defendant Costianes' residence and vehicle during a lawful search performed on February 12, 2021.

On February 17, 2021, a law enforcement official met with Defendant Costianes at 9000 Franklin Square Road in Rossville, Maryland. The officer advised Defendant Costianes that he was meeting with him for the administrative function of providing him with the list of items from the execution of the search warrants of Defendant Costianes' residence, vehicle, and phone that took place on February 12, 2021, and serving the search warrant for the legal blood draw. Defendant

Costianes verbally stated he understood the nature of the contact and was willing to accompany the law enforcement official into Franklin Square Hospital to provide the blood sample. The law enforcement officer explained that the blood sample collection was pursuant to the search warrant he showed to Defendant Costianes earlier. Defendant Costianes was provided a copy of the warrant. Defendant Costianes entered Medstar Franklin Square Medical Center with the law enforcement officer at approximately 6:00 p.m.

At 6:09 p.m., two vials of blood were collected from Defendant Costianes by a registered nurse, from a blood specimen collection kit provided to the FBI from the Maryland State Police. The law enforcement officer took custody of the sample from the nurse and packed it in a container using tamper-evident seals provided. The sample was then sealed with evidence tape and initialed by the law enforcement officer.  The nurse signed the documents provided with the blood draw kit and an additional document to note the turn over and seizure of the blood sample.

While the nurse collected Defendant Costianes' blood sample, Defendant Costianes made several spontaneous verbal utterances regarding his presence at the United States Capitol on January 6, 2021.  First, Defendant Costianes stated he saw "people in all-black, some wearing camouflage and helmets," and he saw a "black guy with a baseball bat."  Defendant Costianes then made the verbal utterance, "I know that I shouldn't be saying anything about this to you guys because if some Federal Code or whatever, but . . ." A law enforcement officer repeatedly reminded Defendant Costianes that law enforcement agents were present solely for the execution of the search warrant and that Defendant Costianes was not required to discuss any details of his case, and he would not be asked about his case.

The nurse informed Defendant Costianes that his discharge paperwork was almost complete and he would be discharged soon. Defendant Costianes spontaneously stated he had been a patient at the hospital since his car accident and that he had been diagnosed with "Low-T and that he was

2

at '278'." The law enforcement officer asked Defendant Costianes what he took for that, to which he replied, "I take something." Several minutes later, a second nurse entered the room and asked Defendant Costianes routine questions, such as whether or not he was a prior patient of the hospital and what physicians he was seeing. Then, Defendant Costianes stated he regularly saw a doctor for injuries sustained during an accident that he had been in earlier in 2020. A nurse asked Defendant Costianes where he was filling his prescriptions, to which Defendant Costianes replied, "Oh, I don't believe in those."

Defendant Costianes was discharged shortly thereafter. Before departing, the law enforcement officer informed Defendant Costianes that he would contact him regarding his "work phone" as soon as its analysis was finished, and they would get it to him as soon as practically possible.

On February 5, 2022, Defendant Costianes filed an amended motion seeking to suppress the statements he made to law enforcement while fulfilling a search warrant for the blood draw at Franklin Square Hospital, Baltimore, Maryland [hereinafter "Def.'s Mot."]. In his motion, Defendant Costianes asserts that he made his statements while he was in custody and before being advised of his *Miranda* rights and that his statements were not voluntary. Def.'s Mot. at 3-5.

## **ARGUMENT**

Law enforcement officers must notify criminal defendants of their *Miranda* rights "only when a suspect being interrogated is in custody." *Morales v. United States*, 866 A.2d 67, 71 (D.C. 2005). *Miranda* rights are applicable only in situations where there has been such a restriction on a person's freedom as to render them in custody and while in custody, they are interrogated. *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)

("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody. . ."). Interrogation refers to any words or actions on the part of law enforcement that law enforcement should know are reasonably likely to elicit an incriminating response from the criminal defendant. *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980). Such words or actions may be direct questions or their functional equivalent. *Id. Miranda* requires the criminal defendant be both in custody and under interrogation. *Baker v. McCarty*, 468 U.S. 420, 434 (1984) ("[A] person subjected to custodial *interrogation* is entitled to the benefit of the procedural safeguards enunciated in *Miranda*.") (emphasis added). If the criminal defendant is either not in custody or not interrogated, then a *Miranda* warning is not required. *Innis*, 446 U.S. at 300 ([T]he procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."). As such, "[v]oluntary statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478.

      Here, there was no express questioning of the defendant. The statements by the defendant were spontaneously offered and not in response to any direct questioning, or its functional equivalent, by the law enforcement officers present. The presence of law enforcement officers alone while a criminal defendant is in custody and makes statements is not enough to be considered interrogation. *Innis*, 446 U.S. at 299. Like in *Innis*, there was no direct questioning of the defendant. Further, the law enforcement officers present repeatedly reminded the defendant that he was not required to discuss any details of his case and he would not be asked about his case. This scenario does not amount to a custodial interrogation or "coercive police practices" that law enforcement officers "should have known were reasonably likely to elicit an incriminating response." *Id.* at 301–02.

      Further, the only direct questioning of the defendant while at Franklin Square Hospital

was by the nurse completing his discharge paperwork. In the course of this questioning, the defendant made a statement about being a patient at the hospital. The law enforcement officer responded by asking what he took for his condition, to which the defendant responded. While this is a direct question from a law enforcement officer while the defendant was in custody, it does not amount to an interrogation or its functional equivalent.  First, the setting here was not the "interrogation environment' created by the interplay of interrogation and custody [that] would 'subjugate the individual to the will of his examiner" the Court was concerned about in *Miranda*. *Innis*, 446, U.S. at 299 (quoting *Miranda*, 384 U.S. at 457–58).  There were none of the coercive police tactics discussed in *Miranda* present here. *Miranda*, 384 U.S. at 450–53.  Second, it cannot be said that the law enforcement officer should have known that his question was "reasonably likely to illicit an incriminating response" from the defendant.  *Innis*, 446, U.S. at 302. Like the scenerio in *Innis*, this situation "is not a case where police carried on a lengthy harangue in the presence" of the defendant. *Id.* at 303.  Rather, the interaction between law enforcement officers and the defendant "appears to have consisted of no more than a few off hand remarks." *Id.*

      Additionally, Defendant Costianes's statements at the time of his blood draw were not involuntary. A criminal defendant's statement is voluntary for purposes of due process if it is "the product of an essentially free and unconstrained choice by its maker." *Schnecklock v. Bustamonte*, 412 U.S. 218, 225–26 (1973) (citing *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961)).  A statement is inadmissible only "if under the totality of the circumstances it was involuntarily obtained." *United States v. Reed*, 522 F.3d 354, 358–59 (D.C. Cir. 2008) (quoting *United States v. Bradshaw*, 935 F.2d 295, 299 (D.C. Cir. 1991)).   The D.C. Circuit has held that "egregious facts [are] necessary to establish that the statements . . . made during questioning [are] involuntary." *United States v. Hallford*, 816 F.3d 850, 863 (D.C. Cir. 2016) (quoting *United States v. Mohammed*, 693 F.3d 192, 198 (D.C. Cir. 2012)).  "Statements made where the circumstances are 'less than 'egregious' are usually voluntary." *Hallford*, 816 F.3d at 863.  The facts in the case at bar certainly indicate that the statements made by Costianes were the product of a free choice—

5

indeed, they were spontaneous. Hence, those statements were voluntary and should not be suppressed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that Defendant Elias Costianes' Amended Motion to Suppress Statements be denied,

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: _____
JOHN W. BORCHERT (D.C. Bar No. 472824)
Assistant United States Attorney
Fraud Section
555 Fourth Street NW
Washington, D.C. 20530
(202) 252-7679
John.Borchert@usdoj.gov

February 9, 2022

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February 2022, I served a copy of the foregoing on counsel for the defendant via the Court's ECF system.

                                                                 _____
                                                                 JOHN W. BORCHERT
                                                                 Assistant United States Attorney