**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Case No. 21-cr-180-RJL** |
| **v.** | **:** | |
| | **:** | |
| **ELIAS COSTIANES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S SUPPLEMENT TO SUPPRESS STATEMENTS**

The United States, by and through its attorney, the Acting United States Attorney for the

District of Columbia, hereby submits this opposition to the Defendant's supplement to amended

motion to suppress statements.     (Dkt. 50.)    The Defendant claims that the United States

Department of Justice violated its policy regarding arresting, questioning, or charging members of

the news media.  (The Defendant made a nearly identical argument in his Motion at Dkt 48).  On

these grounds, the Defendant argues that his statements made to law enforcement must be

suppressed.  For the same reasons as the Government explained in its response to the Defendant's

Motion to Dismiss the Indictment (*See* Dkt No 54),  and will be re-iterated  below, the Defendant's

argument is meritless and should be denied.

**BACKGROUND**

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to

declare the winner of the 2020 presidential election by reviewing and certifying the Electoral

College ballots.  The Defendant was aware of this proceeding, and he wanted to stop it.  He traveled

to Washington, D.C., from his home in Maryland and stayed overnight at a hotel downtown near

the National Mall.

On the afternoon of January 6, the Defendant went to the Capitol to participate in the riot

and to obstruct Congress from meeting to certify the vote.  While at the Capitol, the Defendant climbed scaffolding outside of the building and shouted in support of the rioting crowd.  He then ascended the stairs of the Capitol while shouting "Mitch McConnell's a traitor" and "Let's go." Once inside the Capitol, the Defendant filmed himself taking the "Senators Only" elevator to the second level of the chamber overlooking the Senate floor.  The Defendant entered the Senate chamber where numerous other rioters were rifling through the desks of Senators on the chamber floor.  The defendant left the Senate chamber and, again, used the "Senators Only" elevator.  He then chanted in support of a mob who overran police who were attempting to keep a door sealed. The Defendant left the Capitol sometime thereafter.

The Defendant was arrested on February 12, 2021 at his home in Maryland after agents searched his residence.  In a post-arrest, and post-Miranda statement to law enforcement, the Defendant admitted that he was part of the Capitol breach on January 6, 2021.  The Defendant also stated that he recorded videos inside the Capitol and that he claimed that he had traveled to Washington, D.C., in a "journalistic capacity" and that he wanted to "gather content to post to his YouTube page."  The Defendant later claimed that he had posted approximately 30 videos to his YouTube channel under the caption "Stop the Steal," and that he attended the "Trump Rally on January 6, 2021.  The Defendant also acknowledged, however, that he did not have, nor did he wear, press credentials, and that, on January 6, 2021, he had entered the Capitol building not through any authorized entrance but through a window.  Finally, the Defendant told agents that he believed that "all U.S. citizens were journalists in their capacity to exercise their right to chronicle the history of the United States."   The Defendant also made statements during the execution of a warrant for a legal blood draw on February 17, 2021.  *See* Dkt. 44.

On March 3, 2021, a grand jury returned an Indictment charging the Defendant with six

counts.  (Dkt. 7.) Count 1 charges a violation of 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of Congress; Aiding and Abetting); Count 2 charges a violation of 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); Count 3 charges a violation of 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); Count 4 charges a violation of 40 U.S.C. § 5104(e)(2)(B) (Entering and Remaining in the Gallery of Congress); Count 5 charges a violation of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); Count 6 charges a violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing a Capitol Building).

During a search of the Defendant's home, conducted on the day of his arrest, officers also discovered evidence that led to the Defendant being charged in the District of Maryland with controlled substance offenses and a firearm offense.  See ECF No. 34 in *United States v. Elias Costianes* (Criminal No. JKB-21-0458) (D. MD.).  The Defendant filed a virtually identical motion in the District of Maryland, alleging that the Department of Justice violated its policy in charging (and questioning) a member of the news media and that the charges should be dismissed.  *See Id*. at ECF no. 37.

The United States District Court for the District of Maryland rejected the Defendant's argument and denied the defendant's motion.  See *United States v. Costianes*, 2022 WL 1664468. A transcript of the hearing that was conducted on this issue is attached here at Government's **Exhibit A**.

In this case, the Defendant earlier filed a motion to suppress statements at Dkt. 29.  The Government filed a response at Dkt. 33.  The Defendant filed a reply to the Government's response at Dkt. 38.  The Defendant filed an amended motion to suppress statements at Dkt. 42.  The Government filed another response in opposition at Dkt. 44.

The below Government response is a response to the Defendant's argument at Dkt. 50 exclusively.  The Government response below therefore, pertains directly to the Defendant's claim that he is a  "member of the media."  and that a violation of DOJ policy entitles him to the relief he seeks.  However, to the extent the Court is considering the suppression of the Defendant's statements as a whole, the Government incorporates by reference all of its responses to the Defendant's motions as they pertain to this issue.  *See* Dkt Nos. 33, and 44; *See also*, the Government's response to the Defendant's Motion to Dismiss the Indictment at Dkt. No. 54.

## **ARGUMENT**

The Defendant moves to suppress statements based on his claim that the government violated the Department of Justice's media policy.  Specifically, the Defendant argues that, because he was a "member of the media," the government was required under 28 C.F.R. § 50.10 to notify the Director of the Office of Public Affairs and obtain the express authorization of the Attorney General before applying for the criminal complaint, conducting the arrest operation, or questioning the Defendant about the offense under investigation.  To that end, the Defendant argues that the agents who questioned him were acting outside the policy dictated by 28 C.F.R. 50.10 and the Defendant's statements should be suppressed.  *See* Dkt 50.  To the extent this investigation implicated the Department's media policy at all, the Defendant is not entitled to the relief he seeks.

As the Government explained in Dkt. 54, the government is aware that the Department of Justice has promulgated binding regulations relating to investigations concerning members of the news media.  Undersigned counsel, specifically, is familiar with those regulations, including the applicable requirements set forth in 28 C.F.R. § 50.10, the Justice Manual, and the Attorney

General's July 19, 2021, Memorandum.  Under § 50.10(f), Department employees must "first provid[e] notice to the Director of the Office of Public Affairs and obtain the express authorization of the Attorney General" before the employee: (1) "subject[s] a member of the news media to questioning"; (2) "seek[s] a warrant for an arrest, or conduct[s] an arrest, of a member of the news media"; or (3) "present[s] information to a grand jury seeking a bill of indictment . . . against a member of the news media"; in connection with "any offense" that the "member of the news media . . . is suspected of having committed in the course of, or arising out of newsgathering activities." 28 C.F.R. § 50.10(f)(1)–(3).

The Government has complied with this policy.  At the outset, the Defendant is not a member of the news media.  Filming oneself on a rampage and posting that footage to YouTube does not make that person a member of the media, nor does it erect a journalist's privilege behind which the Defendant is trying to shield himself. *See Branzburg v. Hayes*, 408 U.S. 665, 691 (1972). The Defendant' proffers no information to suggest that he has ever held a press credential, been otherwise affiliated with a news organization, or even identified himself as a member of the news media, beyond saying that he was at the Capitol on January 6th in a "journalistic capacity."

But even assuming *arguendo*, that the Defendant was a member of the media, any violation of the Department's policy does not entitle the Defendant to dismissal of the indictment, the suppression of evidence, or any other remedy in connection with this prosecution.  As stated in Dkt.54 the Supreme Court "clearly held" that a court "need not exclude evidence obtained in violation of an agency's regulations or rules where neither the Constitution nor statute require adoption of any particular procedures."  *United States v. Williamston*, 14 F.3d 598, 1993 WL 527977, at *9 (4th Cir. 1993) (citing *United States v. Caceres*, 440 U.S. 741 (1979)).  The Defendant has cited no law, statutory or otherwise, that required the Department to establish the

media policy set forth in 28 C.F.R. § 50.10.  That is because there is none.  Accordingly, the Defendant would not be entitled to suppression of statements—even if the Department's media policy had been violated.  *See id.*

In fact, the very regulation that serves as the basis of the Defendant's Motions makes this expressly clear.  Under § 50.10(j), the Department is explicit that its media policy "is not intended to, *and does not*, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."  28 C.F.R. § 50.10(j) (emphasis added).  Instead, the policy provides for an internal enforcement mechanism.  *See id.* § 50.10(i) ("Failure to obtain the prior approval of the Attorney General, as required by this policy, may constitute grounds for an administrative reprimand or other appropriate disciplinary action.").

The fact that the guidelines do not create or recognize any legally enforceable right in any person has been upheld by many courts.  See *In re Special Proceedings*, 373 F.3d 37, 44 n. 3 (1st Cir.2004) (noting that DOJ guidelines state that they do not create legally enforceable rights); *In re Grand Jury Subpoena American Broadcasting Companies*, Inc., 947 F.Supp. 1314, 1322 (D.Ark.1996) (declining to quash subpoena based on failure to comply with DOJ regulations, on ground that regulations, by their own terms, confer no rights on media witnesses). *See also In re Grand Jury Proceedings No. 92-94* 2 F.3d 876, 880 (4th Cir.1994) (holding that special prosecutor's failure to comply with guidelines regarding issuance of subpoenas to attorney, even if applicable, were not enforceable by witness through motion to quash)

The District Court in Mr. Costianes' Maryland case cited to another Fourth Circuit case that explained that this regulation "is of the kind to be enforced internally by a government department, and not by courts through exclusion of evidence."  See *United States v. Costianes,*

2022 WL 1664468 (citing *In re Shain*, 978 F.2d 850 (4th Cir. 1992); See also *United States v. Caceres* 440 U.S. 741 (1979).

Additionally, the D.C. Circuit court ruled on this issue in *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006).  In that case, appellants contended that the Department did not comply with DOJ guidelines for issuing subpoenas to news media and that such failure provides independent basis for reversal.  *Id*. at 1152.  In rejecting this argument the D.C. Circuit explained:  "The guidelines, not required by any constitutional or statutory provision [] exist to guide the Department's exercise of its discretion in determining whether and when to seek the issuance of subpoenas to reporters, not to confer substantive or procedural benefits upon individual media personnel."  *Id*. at 1153.  The Court in *In re Grand Jury Subpeona, Judith Miller* went on to state that "It is well established that the exercise of prosecutorial discretion is at the very core of the executive function. Courts consistently hesitate to attempt a review of the executive's exercise of that function."  Id at 1153 (citing *United States v. Armstrong*, 517 U.S. 456, 464–65, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

Moreover, even if the defendant was a member of the news media, this does not absolve him of accountability under the law.  See *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972).  Reporters are not immune from conviction for criminal conduct, and prosecutors may pursue charges against such individuals even if it has an effect on the gathering of news.  See *Cohen v. Cowles Media Co*., 501 U.S. 663, 669 (1991) ("The Supreme Court has expressly instructed that 'generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news.")

Accordingly, because no law requires the Department's media policy, and the policy's express terms disclaim any private right of action, the Defendant cannot rely on an alleged

violation of 28 C.F.R. § 50.10(f)—even if such a violation had occurred—to justify the suppression of his statements.  (For the same reasons, the Defendant cannot rely on a violation of this policy to justify a dismissal of the Indictment).

## **CONCLUSION**

Thus, for the reasons set forth above, the Court should deny the Defendant's Motion.

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


*/s/ Christopher M. Cook*
CHRISTOPHER M. COOK
Assistant U.S. Attorney (detailed)
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
christopher.cook5@usdoj.gov
KS ID No. 23860