UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-180 (RJL) |
| : | |
| ELIAS COSTIANES, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION IN LIMINE TO PRECLUDE
IMPROPER DEFENSE ARGUMENTS AND EVIDENCE**

The United States of America moves *in limine*, pursuant to Fed. R. Evid. 401, 403, and 611(b), to preclude the defendant, Elias Costianes, from introducing evidence or making arguments:

(1) On selective prosecution, including the status, disposition, pendency, or lack of charges related to cases against members of the news media arising out of the events of January 6, 2021;

(2) That the First Amendment permitted his conduct;

(3) On the specific location of security cameras in the U.S. Capitol;

(4) On specific Secret Service tactics and emergency operations;

(5) That his conduct was authorized by former President Trump or other officers or officials;

(6) That any inaction by law enforcement permitted his conduct; and/or

(7) That his prior good acts or culpability relative to other actors on January 6, 2021 should negate his criminal conduct.

**I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

In the weeks before January 6, 2021, Elias Costianes, a salesman with experience selling used vehicles and real estate, and who possessed no press credentials, made plans to travel to

Washington, D.C. for the purpose of disrupting the certification of the Electoral College votes. In his text messages dated before January 6, Costianes repeatedly espoused conspiracy theories about the results of the 2020 presidential election, claiming that "dominion is in the business of voter fraud" and that election officials had "blatantly [been] taking ballots out from underneath tables."

In the afternoon on January 6, Costianes, carrying no video recorder or camera other than his cell phone, marched with other rioters towards the Capitol. Notably jubilant when rioters overwhelmed police lines and gained access to the Northwest Staircase and Upper West Terrace, Costianes followed the mob up the staircase while cheering and shouting "Mike Pence is a traitor!" and "Mitch McConnell is a traitor." Costianes entered the Capitol Building from the Northwest Terrace by crawling through a broken window near the Senate Wing Door.

Inside the Capitol, Costianes filmed himself and chanted as rioters overwhelmed police. By the Rotunda interior door, Costianes shouted at police, "Open the fucking doors!" and cheered when rioters forced a new breach, allowing rioters from outside to stream into the building. Costianes later boarded the "Senators Only" elevator to the second level of the Senate chamber overlooking the Senate floor. He entered the Senate gallery while other rioters were rifling through Senators' desks on Senate floor. After Costianes left the Capitol, he returned to his hotel. Encountering an actual news media team in the hotel lobby, Costianes taunted them, shouting "Fake news! Fake news! Faker!"

On January 8, 2021, Costianes texted a friend that Trump had just conceded the election, stating "I'm going to jail.  LOL![1] I mean, [I] was like waving in the fucking security camera of the Senators only elevator for the love of God. I was in the senate chambers for a while." Costianes later added, "I feel like a criminal or something.  Please make sure you delete everything I sent."

---

[1] "LOL" is a commonly used abbreviation for "laughing out loud."

2

On January 9, 2021, in between text messages with a different friend regarding deleting incriminating messages and a coming "civil war in this country," Costianes boasted that he could not be prosecuted for his actions on January 6 because he was "gathering content for a story for [his] channel 😊" and had "journalistic immunity. Lmao."[2]

Costianes was charged with six violations stemming from his conduct inside the U.S. Capitol on January 6, 2021: (1) obstruction of Congress; aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), 2; (2) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (3) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) entering and remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B); (5) disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF 7.

## II.   LEGAL BACKGROUND

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government details seven issues below to prepare this case for an efficient trial.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place

---

[2] "Lmao" is a commonly used abbreviation for "laughing my ass off."

reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion, for example, to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which the agent did not testify on direct examination and that did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting the defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until a defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross-examination of

government's witness with response to matter only related to an affirmative defense and not elicited through direct examination).

None of the seven topics below constitute proper topics for Costianes' case, cross-examination, or argument. Preventing Costianes from exploring these topics will not infringe his Confrontation Clause right because, as explained below, such topics have little probative value, and Costianes has more direct ways of making his case.

### III. ARGUMENT

#### A. *Topic #1:* This Court Should Preclude Evidence and Argument About the Status, Disposition, Pendency, or Lack of Charges Related to Cases Against Members of the News Media

In his prior motions to the Court, Costianes claimed that he entered the U.S. Capitol on January 6, 2021 as a member of the news media to film the riot for his YouTube channel. ECF 48, 49, 50. In support of these claims, Costianes argued that his "Stop the Steal" YouTube channel has "nearly 10,000 followers and he is considered an 'influencer' on that platform and [is] thus a legitimate member of the press." ECF 48.

Based on Costianes' prior motions to the Court, the United States believes that Costianes may attempt at trial to introduce evidence and argument suggesting that he should not have been charged in this case because he is a member of the news media. Such evidence and argument would be inappropriate and should be excluded under Fed. R. Evid. 401 and 403.

As the D.C. Circuit has recognized, a selective prosecution claim implicates "an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983). Any evidence or argument pertaining to selective prosecution accordingly has no place at Costianes' trial and should be excluded. *See United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir. 2006) (affirming district court's exclusion of selective-prosecution evidence at trial);

5

*United States v. Clay*, 618 F.3d 946, 955-56 (8th Cir. 2010) (same); *United States v. Berrigan*, 482 F.2d 171, 174-75 (3d Cir.1973) (same). But, it has no bearing on the determination of a defendant's guilt or innocence on the underlying charges.[3] *See Washington*, 705 F.2d at 495.

To be clear, while the government emphatically disputes that Costianes was, or has ever been, a member of the media, the Government is *not* asking the Court to exclude evidence or argument related to whether Costianes himself believed he was acting as a member of the news media. Any fishing expedition, however, into the government's charging decisions regarding cases against members of the news media, including cases in which individuals were not charged, or attempt to introduce evidence regarding whether or not members of the news media have been charged, should be precluded.

Such evidence or argument which would implicate the government's charging decisions and procedural events occurring after January 6—have no bearing on the proof of Costianes' alleged criminal conduct on January 6. In addition, any such evidence or argument would divert the Court's attention to the conduct and charges (or lack thereof) of other unrelated individuals. Because any inquiry into the government's charging decisions for other individuals would confuse the issues, cause undue delay, and waste time, Rules 401 and 403 support exclusion.

    **B.**    *Topic #2:* **The Court Should Preclude the Defendant from Arguing that His Conduct Was Protected by the First Amendment**

The Court should preclude Costianes from arguing or eliciting evidence that on January 6, he enjoyed a First Amendment right to protest or film content for his "Stop the Steal" YouTube channel inside the restricted area around the Capitol or inside the Capitol building itself.

---

[3] At least one court has posited that such evidence and argument could be relevant at sentencing under 18 U.S.C. § 3553(a). *See Griffin*, 549 F. Supp. 3d at 59.

6

At trial, the government will show that the Capitol grounds and building were restricted on January 6 within the meaning of 18 U.S.C. § 1752(c)(1)(B) (defining a "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting"). The government can—and on January 6, did—restrict an area that is a traditional public forum for legitimate government ends. Courts in this district have repeatedly affirmed that the government may close a public forum in similar circumstances. *See, e.g.*, *Mahoney v. United States Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (U.S. Marshals Service did not violate the First Amendment by restricting access to a sidewalk in front of St. Matthew's Cathedral for Red Mass, even though the sidewalk was a traditional public forum). Unsurprisingly, other courts have similarly upheld temporary closures of traditional public forums for safety reasons. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1129-30 (9th Cir. 2005) (finding that an emergency order closing a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions"); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order"); *Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street-closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of the delegates).

On January 6, the USCP and the Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a portion of the Capitol grounds. Although

Costianes may attempt to suggest otherwise, no member of the public, including Costianes, had a First Amendment right to engage in protest or speech or film videos for YouTube within that restricted area. The Court should preclude Costianes from eliciting testimony to the contrary or arguing that he was engaged in protected speech when he was on the Capitol grounds.

      C.    *Topic #3:* **This Court Should Preclude the Defendant from Seeking Testimony on the Location of Specific Surveillance Cameras**

The Court should restrict Costianes from presenting evidence or seeking to elicit testimony regarding the specific position of U.S. Capitol Police ("USCP") surveillance cameras. To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including USCP surveillance footage. As detailed in the Declaration of Thomas A. DiBiase (Exhibit 1), the USCP maintain an extensive closed-circuit video system that includes cameras inside the Capitol building, inside other buildings within the Capitol complex, and outside on Capitol grounds. These cameras captured thousands of hours of footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021.

However, the USCP surveillance system also serves an important, and ongoing, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and dissemination. To find relevant footage from the USCP's surveillance system and adequately prepare for trial, one would need to use maps that display the locations of the interior and exterior cameras. The government has therefore provided the defense with maps that display these locations. However, due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of USCP surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.

1.  **The Court Should Preclude the Defendant from Questioning Witnesses about the Exact Positions of USCP Cameras, Introducing Such Evidence Himself, or Admitting USCP Maps of Camera Coverage**

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded considering the ongoing security needs of the Capitol. The defense can probe what USCP cameras *show*, and what they don't, by asking about the general location of each camera. For example, a camera positioned by an exterior door facing the Rotunda can be described as "camera near exterior door, facing Rotunda" without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all USCP cameras would risk compromising these security concerns for no additional probative value—the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

In any event, any relevance of this evidence is substantially outweighed by the danger to national security. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial and can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security

without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.* As such, this evidence ought to be prohibited at trial.

  **D.**  *Topic #4:* **The Court Should Preclude Examination about Specific Secret Service Tactics and Emergency Operations**

The Court should limit Costianes' cross-examination of any United States Secret Service ("Secret Service") witnesses on their specific tactics and emergency operations. Among other crimes, Costianes is charged with violating 18 U.S.C. §§ 1752(a)(1) and (2) by knowingly entering or remaining in a restricted building or grounds without lawful authority and engaging in disorderly or disruptive conduct while in that restricted area. Section 1752 defines "restricted buildings or grounds" to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B). To meet its burden of proof at trial, the government will call a witness from the Secret Service to testify that, at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael Pence and his two immediate family members—all of whom were present at the Capitol. This official will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to the Secret Service's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses. Specifically, Costianes should be precluded from questioning the witness(es) about the following:

1. Secret Service protocols for when emergencies occur, including those related to the locations where protectees or their motorcades are taken at the Capitol; and

2. Operational specifics about Secret Service protective details, such as the number and

10

type of agents the Secret Service assigns to protectees.

Cross-examination of Secret Service witnesses about these extraneous matters, which will be beyond the scope of direct examination, should be excluded as irrelevant and unduly prejudicial. The Secret Service's general protocols about relocation for safety, for instance, should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, operational specifics about Secret Service protective details are not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time, nor that the Vice President was temporarily visiting. None of the other elements to be proven or available defenses implicate further testimony from the Secret Service.

And any relevance to this evidence is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or biases of witnesses.

### E.     *Topic #5:* **The Court Should Preclude the Defendant from Arguing Entrapment by Estoppel or Making a Public Authority Defense**

The Court should prohibit Costianes from making arguments, introducing irrelevant evidence, or suggesting that former President Donald J. Trump or any other officials gave the defendant permission to attack the U.S. Capitol in what are commonly known as "entrapment-by-estoppel" or "public authority" defenses. He cannot point to such permission, and, even if he could, it would not constitute legal permission for his particular conduct.

As courts in this district have explained, the entrapment-by-estoppel and public authority defenses are closely related and derive from a constitutional prohibition against "convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *United*

11

*States v. Sheppard*, No. 21-cr-203, 2022 WL 17978837, at *7 (D.D.C. Dec. 28, 2022) (J. Bates) (quoting *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)). Both defenses are narrow ones, however, and a defendant may succeed on them only if he meets rigorous evidentiary requirements. *See United States v. Alvarado*, 808 F.3d 474, 484-85 (11th Cir. 2015) ("The public authority defense is narrowly defined, however, and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) ("The [entrapment-by-estoppel] defense is a narrow one."). To succeed on an entrapment-by-estoppel claim, a defendant must prove:

> (1) that a government agent actively misled him about the state of the law defining the offense;
>
> (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense;
>
> (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and
>
> (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (C.J. Howell) (quoting *Cox*, 906 F.3d at 1191). This district has articulated a similar four-part analysis for the public authority defense:

> [A]n individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field.

*Sheppard*, 2022 WL 17978837 at *8 (quoting *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976). Common between these standards is, among other things, that a government official must offer a "state" or "statement" of the law.

Costianes has not, and cannot, argue that, in urging his supporters towards the Capitol, then-President Trump made a "statement" of law. By now, several courts in this district have considered various defendants' arguments that the former President's words immunized their actions on January 6. To the government's knowledge, all these arguments have failed. *See, e.g.*, *Sheppard*, 2022 WL 17978837 at *9 (prohibiting defendant from seeking discovery or presenting evidence at trial on entrapment-by-estoppel or public authority defenses); Order at 2, ECF No. 39, *United States v. Thompson*, No. 21-cr-161 (D.D.C. Mar. 23, 2022) (J. Walton) (excluding evidence of former President Trump's statements for all purposes as unduly prejudicial under Fed. R. Evid. 403); *United States v. Grider*, No. 21-cr-022, 2022 WL 3030974, at *4 (D.D.C. Aug. 1, 2022) (J. Kollar-Kotelly) (declining to instruct jury on defense of entrapment by estoppel); *Chrestman*, 525 F.Supp.3d at 33 (noting that an entrapment-by-estoppel defense is "highly unlikely" to succeed and declining to consider it as weighing in favor of granting pre-trial release).

Defendants' efforts to assert an entrapment-by-estoppel defense have uniformly failed, given that, as Judge Bates observed, the defense is available "only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." *Sheppard*, 2022 WL 17978837 at *9. The key challenge for the defendant is that, as other courts have observed, "President Trump neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building or impeding the certification of the electoral vote was lawful." *Id.* Rather:

> [Trump's] speech simply suggests that it would be an act of "boldness" to "stop the steal." Thus, allowing [the defendant's] reliance on these words would be an instance of allowing "following orders, without more, [to] transform an illegal act into a legal one"—something the D.C. Circuit has unequivocally declined to do.

*Id.* (quoting *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)).

Similarly, Judge Kollar-Kotelly, in considering an entrapment-by-estoppel argument, noted that "former President Trump's statements did not in any way address the legality of the actions he urged his supporters to take. He did not, for example, assure them that marching along Pennsylvania was 'lawful' or that occupying Capitol grounds was 'permissible.'" *Grider*, 2022 WL 3030974 at *3. In short, then-President Trump did not mislead the defendant about the state of the law, because Trump did not make any statement about the law at all. *Id.* at 2.

Even if then-President Trump *had* made a statement about the law, allowing those statements to immunize the defendant's conduct here would raise serious constitutional concerns. As Judge Howell observed about another entrapment-by-estoppel defense by a similarly situated defendant, "No American President holds the power to sanction unlawful actions because this would make a farce of the rule of law." *Chrestman*, 525 F.Supp.3d at 32:

> [N]o President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters. Accepting that premise, even for the limited purpose of immunizing defendant and others similarly situated from criminal liability, would require this Court to accept that the President may prospectively shield whomever he pleases from prosecution simply by advising them that their conduct is lawful, in dereliction of his constitutional obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That proposition is beyond the constitutional pale, and thus beyond the lawful powers of the President.
>
> Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order. In addition to his obligation to faithfully execute the laws of the United States, including the Constitution, the President takes an oath to "preserve, protect and defend the Constitution." U.S. Const. art. II, § 1, cl. 8. He cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution.

*Id.* at 32–33 (D.D.C. 2021). In other words, to allow an entrapment-by-estoppel or public authority defense based on the President's false statements of law would implicate both the Take Care clause

14

and the presidential oath of office, and, more fundamentally, disrupt the nature of the rule of law in America.

Nor can Costianes point to statements or permission from other government actors. Although *Chrestman* involved an argument that former President Trump gave the defendant permission to enter the Capitol grounds, the reasoning in *Chrestman* applies equally to any argument that other officials or law enforcement officers gave permission to the defendant to do the same. Just as a President cannot unilaterally repeal laws, no other officials or members of law enforcement could use their authority to allow individuals to enter the Capitol building during a violent riot. As Judge Howell observed, "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377, at *2 (D.D.C. June 8, 2022).

Even if Costianes could establish that an official or officer gave him permission to do what he did on January 6 (he cannot), his reliance on any such statement would not be reasonable considering the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F.Supp.3d at 32. Moreover, Costianes' actions here contradict any argument that he relied on any such statement by law enforcement when he decided to unlawfully enter the Capitol grounds and the Capitol building itself. Indeed, his own video evidence from January 6 shows that Costianes received ample notice that his presence on the Capitol grounds was unlawful. As police faced off with rioters near scaffolding by the Northwest Staircase, Costianes remarked that officers were "shooting tear gas." As he observed rioters breaking through police lines at the Northwest Staircase, he stated "They're in. Holy shit they broke into the Capitol. Oh, shit. That was a flashbang." After climbing the Northwest Staircase and making

15

his way to the Upper West Terrace, he commented that rioters were "trying to break in here." Video footage shows Costianes *entered* the Capitol building through a broken window by the Senate Wing Door while jubilantly screaming "yeah, yeah, yeah!" Accordingly, Costianes should be prohibited from arguing—speciously and contrary to law—that his conduct was legal because someone allegedly told him it was.[4]

> F. *Topic #6:* **The Court Should Preclude the Defendant from Arguing that Alleged Inaction by Law Enforcement Officers Made His Conduct on January 6 Legal**

In addition to prohibiting arguments that any officials or officers permitted the defendant to enter the Capitol grounds, the Court should bar Costianes from arguing that any failure of law enforcement to act rendered his conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the President, a law enforcement officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F.Supp.3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law, nor can an officer ratify unlawful conduct by failing to prevent it.

"Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *Williams*, No. 21-cr-377 at *3; see also *Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (en banc) (entrapment-by-estoppel defense rejected after defendants argued that their prosecuted conduct had been implicitly approved by the police but

---

[4] Regardless, "entrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial." *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 520 (D.P.R. 2013). Similarly, as of this filing the defendant has not provided notice, pursuant to F. R. Crim. P. 12.3 that he intends of assert a public authority defense. Having raised no such defense in pre-trial filings, and for the reasons discussed above, the defendant should be precluded from raising these defenses at trial. [Note, the Rule 12.3 deadline is "the time provided for filing a pretrial motion, or at any later time the court sets."]

could not show that it was "affirmatively authorized" by the police). The same principles apply here. Costianes should be prohibited from arguing that his conduct was lawful because law enforcement officers allegedly failed to prevent it or respond directly to it when it occurred.

The government acknowledges that the conduct of law enforcement officers may be relevant to Costianes' state of mind on January 6, 2021. However, unless he was aware of law enforcement's alleged inaction at the time of his entry onto restricted grounds or into the Capitol building, any alleged inaction would have no bearing on his state of mind and therefore would not meet the threshold for relevance. Fed. R. Evid. 401 (Evidence is relevant if it "has any tendency to make a fact more or less probable"). *See also Williams*, No. 21-cr-377, ECF No. 87 3-4 ("As a logical matter, however, any action or inaction of which defendant was not aware cannot possibly have had any effect on his state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401.").

  G. *Topic #7:* **The Court Should Preclude the Defendant from Introducing Evidence of His Own Good Conduct or Comparing His Culpability Relative to Other Rioters**

Costianes entered the U.S. Capitol through a broken window on January 6, 2021 with the intent to disrupt the certification of the Electoral College. After seeing rioters overrun a police line and head towards the Capitol building, Costianes was single-minded in following them, stating "I'm getting upside that building" and "Let's go, dude. Let's fucking go. I'm in. Let's go." On his way up the Northwest Staircase, the defendant yelled "Mike Pence is a traitor! Mike Pence is a traitor!" Once inside the Capitol, Costianes yelled and cheered as rioters breached the Rotunda Doors, allowing more rioters to pour into the Capitol building. Determinedly, he followed other rioters into the Senate Gallery, commenting jubilantly that lawmakers had "left in a hurry."

He is charged accordingly. He is not, however, charged with directly injuring anyone,

stealing any items, or vandalizing particular property. The Court should preclude any argument that Costianes' lack of additional criminal actions on January 6, 2021, or any allegedly helpful acts negate the criminal conduct for which he is charged. *See United States v. Camejo*, 929 F.2d 610, 612-13 (11th Cir. 1991) (a witness's proffered testimony that a defendant declined to participate in a separate, contemporaneous narcotics conspiracy was an inadmissible "attempt to portray [the defendant] as a good character through the use of prior 'good acts'"). Indeed, such evidence would not be particularly probative of whether Costianes is guilty of the offenses with which he is charged.

Evidence of past "good acts" by a defendant is generally not probative unless a defendant is alleged to have always or continuously committed bad acts or engaged in ceaseless criminal conduct. *United States v. Damti*, 109 Fed. Appx. 454, 455-56 (2nd Cir. 2004) (citations omitted). Ceaseless conduct occurs when it is alleged that all the defendant's actions were illegal. *Id*. When that is not alleged and the prosecution can point to specific criminal acts, then evidence of good acts is not probative of the issue of guilt at trial. *Id*. Using specific instances of good acts "to prove lack of intent . . . is not only disfavored, it is not permitted under Rule 405(b)." *United States v. Marrero*, 904 F.2d 251, 259–60 (5th Cir. 1990) (affirming decision to exclude evidence that the defendant "provided more services to some clients than they were actually billed for and that sometimes she rendered services free of charge," which the defendant sought to introduce to show that she did not intend to improperly bill a government agency for medical services).

IV. **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court grant the government's omnibus motion *in limine* in its entirety.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: January 10, 2024 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | */s/ Raymond K. Woo*<br>Raymond K. Woo<br>Assistant United States Attorney<br>AZ Bar No. 023050<br>601 D St., NW<br>Washington, D.C. 20001<br>raymond.woo@usdoj.gov<br>(602) 514-7736<br><br>*/s/ Melanie Krebs-Pilotti*<br>Melanie Krebs-Pilotti<br>Trial Attorney- Antitrust Division<br>Cal Bar. No. 241484<br>601 D St., NW<br>Washington, D.C. 20001<br>melanie.krebs-pilotti2@usdoj.gov<br>(202) 870-7457 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-180 (RJL) |
| : | |
| ELIAS COSTIANES, : | |
| : | |
| Defendant. : | |

# ORDER

This matter having come before the Court pursuant to the Government's motion seeking to preclude certain defense arguments, filed on January 10, 2024, is hereby:

**ORDERED** that the Government's Motion is **GRANTED.** Specifically, the defendant is precluded from introducing evidence or making arguments:

(1) On selective prosecution, including the status, disposition, pendency, or lack of charges related to cases against members of the news media arising out of the events of January 6, 2021;

(2) That the First Amendment permitted his conduct;

(3) On the specific location of security cameras in the U.S. Capitol;

(4) On specific Secret Service tactics and emergency operations;

(5) That his conduct was authorized by former President Trump or other officers or officials;

(6) That any inaction by law enforcement made his conduct legal; and

(7) On his prior good acts, or culpability relative to other actors on January 6, 2021.

HONORABLE RICHARD J. LEON
United States District Judge